G. MARK ALBRIGHT, ESQ.
Nevada Bar No. 001394
D. CHRIS ALBRIGHT, ESQ.
Nevada Bar No. 004904
THOMAS A. LARMORE, ESQ.
Nevada Bar No. 007415
ALBRIGHT, STODDARD, WARNICK & PALMER
801 S. Rancho Dr., Suite D-4
Las Vegas, Nevada 89106
(702) 384-7111
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

CV-S-03-1286-PMP-PAL

BAINBRIDGE INVESTMENTS, INC., a California Corporation, d/b/a AIRPORT CENTER OFFICE SUITES; ELDEN W. BAINBRIDGE TRUST, a California trust; DWIGHT E. BAINBRIDGE PAVILION TRUST, a California trust; BRIAN M. BAINBRIDGE PAVILION TRUST, a California trust; TODD C. BAINBRIDGE PAVILION TRUST, a California trust; MARLA KAY BAINBRIDGE PAVILION TRUST, a California trust; KENNETH M. BOLTON TRUST, a California trust; VALERIA A. BOLTON, a citizen of Iowa; STEVEN BOLTON, a citizen of Iowa; BRENDA BOLTON GABLE, a citizen of Iowa;

Plaintiffs,

vs.

AVIS RENT A CAR SYSTEM, INC., a Delaware corporation; DAVID WILLDEN and NICHOLAS WILLDEN, individuals d/b/a PAYLESS CAR RENTAL; WILLDEN'S AUTOMOTIVE HOLDINGS, LLC, a Nevada limited liability company; JOHN DOES 1 to 50; ROE CORPORATIONS 51 to 100,

Defendants.

**COMPLAINT**

COME NOW, the Plaintiffs, BAINBRIDGE INVESTMENTS, INC., a California Corporation, d/b/a AIRPORT CENTER OFFICE SUITES; ELDEN W. BAINBRIDGE TRUST; DWIGHT E. BAINBRIDGE PAVILION TRUST; BRIAN M. BAINBRIDGE PAVILION TRUST; TODD C. BAINBRIDGE PAVILION TRUST; MARLA KAY BAINBRIDGE PAVILION TRUST; KENNETH M. BOLTON TRUST; VALERIA A. BOLTON, an individual; STEVEN BOLTON, an

individual; and BRENDA BOLTON GABLE, an individual (hereinafter jointly "Plaintiffs" or "Bainbridge Entities"), by and through their undersigned attorneys, ALBRIGHT, STODDARD, WARNICK & PALMER, and as for their claims for relief against the Defendants, AVIS RENT A CAR SYSTEM, INC., a Delaware corporation; DAVID WILLDEN AND NICHOLAS WILLDEN, individuals d/b/a PAYLESS CAR RENTAL; WILLDEN'S AUTOMOTIVE HOLDINGS, LLC, a Nevada limited liability company; JOHN DOES 1 to 50; and ROE CORPORATIONS 51 to 100 (hereinafter collectively referred to as "Defendants") complain, assert, and allege as follows:

## INTRODUCTION

1. Plaintiffs bring this action to recover their costs, expenses, losses, and other damages incurred or to be incurred as a result of Defendants' release of gases and other hazardous substances into the soils and groundwater at and beneath certain property owned by Plaintiffs and located at 5030 Paradise Road, Las Vegas, Clark County, Nevada (APN No. 162-27-101-001), hereinafter referred to as the "Plaintiffs' Property." Said damages, exclusive of interests and costs, are in excess of $75,000.00.

2. Plaintiffs, and each of them, are the owners of the Plaintiffs' Property located in the District of Nevada.

## THE PARTIES

3. Plaintiff BAINBRIDGE INVESTMENTS, INC. is and was, at all times mentioned herein, a California Corporation, doing business as AIRPORT CENTER OFFICE SUITES, with its principal place of business in Sedalia, Colorado. ELDEN W. BAINBRIDGE TRUST is a California trust. DWIGHT E. BAINBRIDGE PAVILION TRUST is a California trust. BRIAN M. BAINBRIDGE PAVILION TRUST is a California trust. TODD C. BAINBRIDGE PAVILION TRUST is a California trust. MARLA KAY BAINBRIDGE PAVILION TRUST is a California trust. KENNETH M. BOLTON TRUST is a California trust. VALERIA A. BOLTON is and was, at all times mentioned herein, a citizen of Iowa. STEVEN BOLTON is and was, at times mentioned herein, a citizen of Iowa. BRENDA BOLTON GABLE is and was, at all times mentioned herein, a citizen of Iowa.

4. Defendant, AVIS RENT A CAR SYSTEM, INC. (hereinafter "Avis"), is and was at all times mentioned herein, a Delaware corporation with its principal place of business at Parsippany, New Jersey, licensed to do business and doing business in the District of Nevada and may be found in the District of Nevada.

5. Defendant DAVID WILLDEN, an individual, is and was at all times mentioned herein, a citizen of Nevada, licensed to do business and doing business as PAYLESS CAR RENTAL in the District of Nevada and may be found in the District of Nevada. Defendant NICHOLAS WILLDEN, an individual, is and was at all times mentioned herein a citizen of Nevada, licensed to do business and doing business as PAYLESS CAR RENTAL in the District of Nevada and may be found in the District of Nevada. Defendant WILLDEN'S AUTOMOTIVE HOLDINGS, LLC, is and was, at all times mentioned herein, a Nevada limited liability company, doing business in the District of Nevada and may be found in the District of Nevada. The three Defendants referred to in this paragraph are sometimes hereinafter jointly referred to as the "Payless Defendants."

6. The true names and capacities of Defendants sued in this action under the fictitious names DOES 1 through 50 and ROES CORPORATIONS 51 to 100 are unknown to Plaintiffs, and Plaintiffs will seek leave of court to amend this Complaint to allege those names and capacities as soon as they are ascertained. Plaintiffs are informed and believe, and on the basis of such information and belief allege, that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in this Complaint, and is liable to Plaintiffs for their damages claimed in this action.

7. Plaintiffs are informed and believe, and on the basis of such information and belief allege, that at all times mentioned in this Complaint, one or more of the Defendants were acting as the agent, servant, partner, employee, or joint venturer of one or more of the remaining Defendants, and in doing the things described in this Complaint were acting within the course and scope of this agency, service, partnership, joint venture, and/or employment with the permission and consent, express and implied, and for the benefit of one or more of the remaining Defendants.

8. Allegations in this Complaint against Defendants refer to both the specifically named Defendants and the fictitiously named Defendants.

## JURISDICTION AND VENUE

9. This court has jurisdiction in this case under 28 U.S.C. section 1332 because the amount in controversy exceeds $75,000.00 and the there is complete diversity of the parties.

10. Venue is proper under 28 U.S.C. section 1391 in that the claims alleged herein include claims which arose within the District of Nevada, and concern or otherwise relate to real properties there.

## GENERAL ALLEGATIONS

11. Upon information and belief, Payless operates a car rental business and has maintained two gasoline Underground Storage Tanks (hereinafter "USTs") at 5175 Rent A Car Road (hereinafter the "Payless Site"), Las Vegas, Nevada, since 1982.

12. Upon information and belief, the Payless Site occupies approximately three acres and is located on the west side of Rent A Car Road, an area with several other rental car businesses. These rental car businesses include Sav-Mor Rent-A-Car to the north, National Car Rental to the south, and AVIS CAR RENTAL (hereinafter "Avis") to the east, across Rent A Car Road at 5164 Rent A Car Road, (hereinafter the "Avis Site").

13. Upon information and belief, a UST leak and gaseous release resulting from a leaking dispenser pump was found at the Payless Site in September 1998. Upon information and belief, the two gasoline UST systems were subsequently repaired and upgraded. A waste oil UST was removed in 1999.

14. Upon information and belief, seven USTs are currently located at the Avis Site. Six of these USTs have been in place since 1981. Four of the USTs are used to store gasoline, one to store diesel, one to store new oil, and one to store used oil.

15. Upon information and belief, a UST leak and gaseous release was discovered at the Avis Site in late 1992, during UST upgrades, at which time leaking piping and the new oil UST were replaced.

16. Upon information and belief, as a result of the foregoing leaks at the Avis Site and the Payless Site, groundwater beneath the Avis and Payless Sites has been contaminated with dissolved volatile organic compounds (hereinafter ("VOCs") and this groundwater has migrated down gradient

1  from the Avis Site and co-mingled with a VOC plume related to the neighboring Payless UST system.

2    17. Upon information and belief, as a result of the aforestated UST leaks, there exists a dissolved hydrocarbon plume in groundwater beneath and flowing from the Payless Site, a dissolved hydrocarbon plume in groundwater beneath and flowing from the Avis Site, and co-mingled portions of these two plumes in certain of the affected groundwater.

  18. These plumes are the result of releases from the Payless Site and the Avis Site. The co-mingled portions of these groundwater plumes extend eastward to off-site down gradient portions between Paradise Road and Maryland Parkway. The Nevada Division of Environmental Protection ("NDEP") has identified the Payless and Avis Sites with facility identification numbers of 8-0000006 and 8-000217, respectively.

  19. Laboratory analysis of groundwater samples collected during the first quarter of 2003, at the Payless, Avis, and off-site groundwater plume locations showed that Benzene and Methyl tertiary-butyl ether ("MTBE") were detected in some groundwater samples in concentrations that are greater than respective Nevada state action levels. Benzene exceeding the state action level of 5 $\mu$g/L was detected in groundwater samples collected from the following five monitoring wells: PMW-1 (202 $\mu$g/L), AVMW-14 (11 $\mu$g/L), HJMW-22 (32 $\mu$g/L), HJMW-25 (21 $\mu$g/L), HJMW-27 (28 $\mu$g/L).

  20. MTBE exceeding the site specific action level of 200 $\mu$g/L was detected in groundwater samples collected from the following twenty-two monitoring wells: PMW-1 (25,900 $\mu$g/L), AVMW-7 (7,700 $\mu$g/L), AVMW-10 (977 $\mu$g/L), AVMW-12 (403 $\mu$g/L), AVMW-13 (16,500 $\mu$g/L), AVMW-14 (39,400 $\mu$g/L), AVMW-15 (9,160 $\mu$g/L), AVMW-18 (587 $\mu$g/L), AVMW-20 (11,500 $\mu$g/L), HJMW-22 (24,400 $\mu$g/L), HJMW-25 (11,800 $\mu$g/L), HJMW-26 (14,900 $\mu$g/L), HJMW-27 (8,070 $\mu$g/L), HJMW-28 (9,500 $\mu$g/L), HJMW-29 (1,680 $\mu$g/L), HJMW-30 (9,170 $\mu$g/L), OMW-32 (9,680 $\mu$g/L), OMW-33 (13,400 $\mu$g/L), OMW-34 (5,920 $\mu$g/L), OMW-36 (2,800 $\mu$g/L), OMW-42 (2,630 $\mu$g/L), OMW-43 (408 $\mu$g/L). Of the remaining wells, fourteen of the wells did not demonstrate MTBE concentrations above the laboratory detection limit and six of the wells demonstrated a concentration below the action level of 200 $\mu$g/L but above the laboratory detection limit.

///

21. Plaintiffs' Property is located in proximity to McCarran International Airport in a neighborhood where the best and highest use for the land is a rental car business. At best and highest use the Plaintiffs' Property is worth approximately 7.1 million dollars.

22. Plaintiffs intended to build a rental car business on the Plaintiffs' Property including a parking garage ten stories high. The Plaintiff's Property is approximately 2.8 acres, which would accommodate 3,000 parking spaces at 300 parking spaces per level.

23. In order to build ten stories high, it is necessary to build downward 30 feet. The contaminated water table is roughly parallel with the surface at 20 feet below the surface. It is not possible to build the Plaintiffs' Property to its best and highest use due to the above-described contamination of the groundwater by the Defendants, including neighboring groundwater which would seep into the Plaintiffs' Property in the event of an excavation to develop the Plaintiffs' Property, and the Plaintiffs' Property has been damaged as a direct and proximate result of the aforestated UST releases.

24. There is no other land available for a rental car business near the airport, which factors into the value of the land.

25. On or about August, 2003, Plaintiffs discovered that contaminants had been released into the groundwater from Defendants' USTs.

26. Plaintiffs are justified in not having discovered the release of contaminants earlier because of the fact that the release was latent, was actively concealed by Defendants, and/or involved subsurface contamination not apparent on visual inspection of the Plaintiffs' Property.

27. Plaintiffs have requested that Defendants assume responsibility for the cost of the investigation and cleanup of the contamination of the Plaintiffs' Property. Defendants have denied responsibility and rejected Plaintiffs' request.

28. As a proximate result of Defendants' contamination of the soils and water table at and beneath the Plaintiffs' Property, Plaintiffs have incurred and will incur the following damages:

(a) Plaintiffs have incurred and will continue to incur substantial expenses, including consultants' fees and attorney fees and costs, associated with characterizing and evaluating

///

6

the nature and extent of the contamination or potential contamination at and beneath the Plaintiffs' Property;

(b)  Plaintiffs will incur substantial expense in remedying the contamination or potential contamination at and beneath the Plaintiffs' Property, and the resultant damage to the Plaintiffs' Property, including, but not limited to, administrative costs and consultants' and attorney fees;

(c)  Plaintiffs have suffered and will continue to suffer loss of the full use and enjoyment of the Plaintiffs' Property, and other interference with its right of private occupancy;

(d)  The value and marketability, use, and condition of the Plaintiffs' Property has been diminished as a result of the contamination;

(e)  Plaintiffs have incurred and will continue to incur attorney fees, costs and expenses in prosecuting this action; and

(f)  Plaintiffs may be required to defend future actions and administrative proceedings arising directly and indirectly from the contamination of Plaintiffs' Property.

29.  As a result of the above, Plaintiffs have been and will be damaged in amounts, the full extent of which are presently unknown, but which exceed $10,000.00, which amounts will be proven at trial.

## FIRST CLAIM FOR RELIEF

### (Negligence)

30.  Plaintiffs incorporate by reference the allegations in the above paragraphs as though fully set forth at length herein.

31.  Defendants owed a duty to Plaintiffs to:

(a)  Properly maintain the improvements and fixtures at the Avis Site and the Payless Site (hereinafter collectively referred to as "Defendants' Properties"), including, but not limited to, the USTs placed on the Defendants' Properties by Defendants;

(b)  Comply with all applicable laws, regulations, rules, and orders of every governmental agency having jurisdiction over Defendants' Properties or the activities or uses to be

///

7

conducted on Defendants' Properties, including, without limitation, those relating to health, safety, and environmental protection;

      (c)    Prevent and clean up any discharge, leakage, spillage, emission, or pollution of any type at the Defendants' Properties; and

      (d)    Not create a nuisance affecting the Plaintiffs' Property at the Defendants' Properties.

32. As a result of Defendants' breach of their duties, contaminants were released into the soils and groundwater table at and beneath Defendants' Properties. In addition, Defendants' breach of their duties has delayed the cleanup of the contamination, resulting in extensive migration of the contamination through the soils at and beneath or adjacent to Plaintiffs' Property. The extensive migration of the contamination has substantially increased the cost of the cleanup to Plaintiffs.

33. Defendants knew or should have known that their failure to exercise ordinary and reasonable care in the maintenance of the improvements and fixtures at Defendants' Properties would result in a release of contaminants into the soils and groundwater table at and beneath Defendants' Properties. In addition, Defendants knew or should have known that their failure to exercise ordinary and reasonable care by failing to diligently perform the cleanup of the contamination at Defendants' Properties, failing to bring the Defendants' Properties into compliance with applicable laws, and failing to prevent or abate the nuisance would result in extensive migration of the contamination through the soils at and beneath the Plaintiffs' Property, thereby increasing the cost of the cleanup.

34. Plaintiffs did not learn of Defendants' negligence until August 2003, because the release was latent and because Defendants fraudulently concealed the release, their subsequent failure to clean up the release, and their failure to abate the nuisance.

35. Plaintiffs have been required to retain the services of attorneys to prosecute this matter and are therefore entitled to reasonable attorney fees and costs as a result of bringing this action.

36. As a direct and proximate result of the negligence of Defendants, Plaintiffs have suffered expenses, losses, and damages in an amount in excess of $10,000.00.

///

///

## SECOND CLAIM FOR RELIEF

### (Negligence Per Se)

37. Plaintiffs incorporate by reference the allegations in the above paragraphs as though fully set forth at length herein.

38. Defendants were obligated to comply with all applicable laws, regulations, rules, and orders of every governmental agency having jurisdiction over Defendants' Properties or the activities or uses to be conducted on Defendants' Properties, including, without limitation, those relating to health, safety, and environmental protection.

39. Defendants failed to comply with state and federal statutes and regulations relating to health, safety, and environmental protection, including, but not limited to, all local, state, and federal statutes, rules, or obligations, in particular, 42 USC §§ 690 et seq., NRS 459.800, et. seq., and NAC 459.9921, et. seq.

40. NAC required Defendants to notify the State Environmental Commission ("Commission") that they caused or permitted discharges of petroleum-based contaminants on and under Defendants' Properties. On information and belief, Defendants failed to notify the Commission that they caused or permitted discharges of petroleum-based contamination, in violation of their statutory and regulatory reporting obligations.

41. At no time did Defendants inform Plaintiffs that they had unlawfully caused or permitted the discharge or release of contaminants on Defendants' Properties. On the contrary, Defendants concealed the discharge of the contaminants from the USTs from Plaintiffs. As a consequence of Defendants' unlawful failure to report, Plaintiffs at all times material to this Complaint were ignorant of the presence of petroleum-based contaminants on and under the Plaintiffs' Property and Defendants' roles in causing and permitting the discharge and continuing discharge of such contamination.

42. Plaintiffs have been required to retain the services of attorneys to prosecute this matter and are therefore entitled to reasonable attorney fees and costs as a result of bringing this action.

///

43. As a direct and proximate result of Defendants' failure to comply with applicable statutes and regulations, Plaintiffs have incurred and will continue to incur expenses, losses, and damages, in an amount in excess of $10,000.00.

### THIRD CLAIM FOR RELIEF

### (Nuisance)

44. Plaintiffs incorporate by reference the allegations in the above paragraphs as though fully set forth at length herein.

45. The release of contaminants into the soils and groundwater table at and beneath and adjacent to the Defendants' Properties has unreasonably and substantially interfered with and obstructed Plaintiffs' free use and enjoyment of Plaintiffs' Property and other rights of privacy, constituting a nuisance, which nuisance is continuing and abatable.

46. Defendants have neglected to abate the continuing nuisance on and/or in the use of Defendants' Properties.

47. Plaintiffs have not consented and do not consent to this nuisance. Defendants knew or should have known that Plaintiffs did not consent to the nuisance.

48. Because the nuisance created by Defendants involves subsurface contamination and was intentionally concealed from Plaintiffs, Plaintiffs did not learn of the nuisance created by Defendants until August, 2003.

49. Plaintiffs have been required to retain the services of attorneys to prosecute this matter and are therefore entitled to reasonable attorney fees and costs as a result of bringing this action.

50. As a direct and proximate result of the continuing nuisance, Plaintiffs have incurred and will continue to incur expenses, losses, and damages, in an amount in excess of $10,000.00.

51. Defendants, and each of them, had actual knowledge of the defective conditions and nuisance they created at the Plaintiffs' Property. The conduct of some or all Defendants in causing and failing to abate the nuisance demonstrates a willful and conscious disregard for the rights and safety of others, and was therefore fraudulent, oppressive, or malicious under NRS

10

42.005, such that Plaintiffs are therefore entitled to recover punitive damages from some or all of the Defendants in an amount sufficient to deter future activity.

## FOURTH CLAIM FOR RELIEF

### (Trespass)

52. Plaintiffs incorporate by reference the allegations in the above paragraphs as though fully set forth at length herein.

53. The acts of Defendants have caused contaminants to be deposited at and beneath the Plaintiffs' Property without Plaintiffs' knowledge or consent in a manner that has caused significant property damage.

54. Plaintiffs are informed and believe, and on the basis of such information and belief allege, that Defendants knew or should have known that the release of hazardous substances from the USTs would result in the entry of foreign matter at and beneath the Plaintiffs' Property.

55. Plaintiffs have a possessory interest in the Plaintiffs' Property. The continuing migration of contaminants through the soils and groundwater table at and beneath the Plaintiffs' Property constitutes a wrongful entry onto the Plaintiffs' Property.

56. Plaintiffs were not aware of Defendants' wrongful entry onto the Plaintiffs' Property until August 2003, because Defendants intentionally concealed from Plaintiffs the fact that Defendants had released and failed to clean up contaminants on the Defendants' Properties.

57. Plaintiffs have been required to retain the services of attorneys to prosecute this matter and are therefore entitled to reasonable attorney fees and costs as a result of bringing this action.

58. As a direct and proximate result of the continuing trespass, Plaintiffs have incurred and will continue to incur expenses, losses, and damages in an amount in excess of $10,000.00.

59. The Defendants' conduct, as described herein, was malicious, fraudulent, and oppressive, and, under NRS 42.005, Plaintiffs are entitled to an award of punitive damages as against these Defendants, and each of them, herein.

///

///

11

## FIFTH CLAIM FOR RELIEF

### (Fraud)

60. Plaintiffs incorporate by reference the allegations in the above paragraphs as though fully set forth at length herein.

61. Defendants actively concealed and suppressed from Plaintiffs the fact that contaminants were leaking from the USTs located beneath the Defendants' Properties.

62. If Defendants had disclosed the fact that contaminants had been released into the groundwater and soils at and beneath the Defendants' Properties, Plaintiffs would have demanded that Defendants diligently clean up the contamination. If Defendants had then failed to diligently clean up the contamination, Plaintiffs would have promptly performed the cleanup themselves and demanded indemnity from Defendants.

63. As a result of Defendants' active concealment and suppression of the fact that the release of contaminants had occurred, the cleanup of the contamination of the Defendants' Properties has been delayed approximately 11 years. During that time, there has been extensive migration of the contamination through the soils and groundwater table at and beneath the Plaintiffs' Property, thereby substantially increasing the cost of the cleanup to Plaintiffs.

64. Plaintiffs have been required to retain the services of attorneys to prosecute this matter and are therefore entitled to reasonable attorney fees and costs as a result of bringing this action.

65. As a direct and proximate result of the fraud of Defendants, Plaintiffs have incurred and will continue to incur expenses, losses, and damages in an amount in excess of $10,000.00.

## SIXTH CLAIM FOR RELIEF

### (Declaratory Relief)

66. Plaintiffs incorporate by reference the allegations in the above paragraphs as though fully set forth at length herein.

///

///

12

67. An actual controversy has arisen and now exists between Plaintiffs and Defendants regarding their various rights and responsibilities in that:

(a) Defendants, and each of them, have refused to abate the condition of the Plaintiffs' Property;

(b) Defendants, and each of them, have not agreed that they are liable for any damages caused as a result of their negligent or otherwise wrongful conduct; and

(c) Defendants, and each of them, have not agreed to provide indemnification or contribution to Plaintiffs for all costs and damages Plaintiffs have incurred and may incur, including, but not limited to: (1) costs, expenses, or damages incurred or awarded in legal actions, and attorney and consultants fees; (2) costs of litigation, arising directly or indirectly from Defendants' negligent or otherwise wrongful conduct; and (3) costs and expenses incurred in investigating, monitoring, removing, and remedying the contamination at and beneath the Plaintiffs' Property.

68. Plaintiffs therefore require the intervention of the Court for declaratory relief pursuant to Nevada Uniform Declaratory Judgments Act to declare Plaintiffs' rights and obligations of the Defendants as to these matters.

**WHEREFORE**, Plaintiffs request judgment against the Defendants as follows:

1. A declaration of Plaintiffs' rights and the obligations of Defendants in connection with Defendants' release of gasoline and other hazardous substances into and beneath the Plaintiffs' Property owned by Plaintiffs;

2. Indemnification of Plaintiffs for Plaintiffs' costs, expenses, and liabilities, including reasonable attorney fees, incurred and to be incurred in connection with the investigation and cleanup of the contamination in the soils and groundwater table at and beneath the Plaintiffs' Property, believed to be in an amount in excess of $10,000.00;

3. Compensatory damages in an amount to be proven at trial, but believed to be in excess of $10,000.00;

4. Punitive damages as may be appropriate from Defendants, in an amount sufficient to deter in the future the described wrongful act;

5. Prejudgment interest; and

6. Such other and further relief as the Court may deem just and proper.

DATED this _14th_ day of October, 2003.

                          ALBRIGHT, STODDARD, WARNICK & PALMER

                          By: _/s/ G. Mark Albright_
                          G. MARK ALBRIGHT, ESQ.
                          Nevada Bar No. 001394
                          D. CHRIS ALBRIGHT, ESQ.
                          Nevada Bar No. 004904
                          THOMAS A. LARMORE, ESQ.
                          Nevada Bar No. 007415
                          801 S. Rancho Dr., Suite D-4
                          Las Vegas, Nevada 89106
                          (702) 384-7111
                          *Attorneys for Plaintiffs*